**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No.: 0:23-CV-62432-RS**

SPEECH TRANSCRIPTION, LLC

      Plaintiff,

v.

SENTINELONE, INC.

      Defendant.

_____/

**DEFENDANT SENTINELONE, INC.'S MOTION TO DISMISS**
**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

   A.  The Specification Of The '799 Patent ............................................................................ 2

   B.  The File History Of The '799 Patent ............................................................................. 4

   C.  The Asserted Claim Of The '799 Patent ....................................................................... 5

   D.  Allegations In The Complaint ........................................................................................ 6

LEGAL STANDARD .................................................................................................................... 7

   A.  Failure to State a Claim ................................................................................................. 7

   B.  Patent Invalidity Under Section 101 .............................................................................. 8

ARGUMENT ............................................................................................................................... 10

   A.  Alice Step 1:  Claim 14 Is Directed To An Abstract Idea .............................................. 11

   B.  Alice Step 2:  Claim 14 Has Nothing That Transforms The Abstract Idea Into Patent Eligible Subject Matter ................................................................................................... 15

CONCLUSION ............................................................................................................................. 18

i

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)........................................................................................10

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018) (per curiam) (Moore, J., concurring in denial
  of rehearing)........................................................................................11

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)........................................................................................9, 10

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)........................................................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)........................................................................................ passim

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................7, 8, 15, 18

*Blue Water Innovations, LLC v. Fettig*,
  18-60671-CIV, 2019 WL 1904589 (S.D. Fla. Mar. 8, 2019) (Scola, J.) ..................................8

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020)........................................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)........................................................................................9, 10, 11

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021)........................................................................................14

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F. 3d 1178 (Fed. Cir. 2020)........................................................................................10, 12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)........................................................................................13

*Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020)........................................................................................13, 14

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)........................................................................................10, 14

ii

*Hunnings v. Texaco, Inc.*,
   29 F.3d 1480 (11th Cir. 1994) (per curiam)................................................................8

*Internet Pats. Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)....................................................................................13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)..................................................................................8, 10

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)........................................................................10, 15, 18

*St. George v. Pinellas County*,
   285 F.3d 1334 (11th Cir. 2002) .....................................................................................8

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1378 (Fed. Cir. 2019).......................................................................................9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)....................................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)......................................................................................11

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) .........................................................................10, 15, 18

## STATUTES

Federal Rule of Civil Procedure 12(b)(6) ........................................................1, 7, 8, 15

35 U.S.C. § 101 ................................................................................................... passim

## OTHER AUTHORITIES

U.S. Patent No. 8,938,799................................................................................... passim

https://patentcenter.uspto.gov/applications/11597486/ifw/docs?application=................................5

Defendant SentinelOne, Inc. ("SentinelOne"), moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for entry of an Order dismissing the Original Complaint for Patent Infringement ("Complaint") filed by plaintiff Speech Transcription, LLC ("Plaintiff"), for failure to state a claim upon which relief can be granted. As grounds therefor and in support of this motion, SentinelOne states:

## INTRODUCTION

The Complaint alleges infringement of U.S. Patent No. 8,938,799 (the "'799 patent"). The '799 patent concerns a security management system for computer systems that have endpoints in which the security management system receives and executes third-party security software. The Complaint fails to state a claim because the '799 patent is invalid for claiming nothing more than an abstract idea, which is subject matter that is ineligible for patent protection.

The asserted claim of the '799 patent is directed to the abstract idea of a computing platform for receiving and executing security software modules from multiple vendors. The asserted claim does not have any elements beyond this abstract idea that transform the nature of the claim into patent eligible subject matter. Rather, the asserted claim is written at a high level of generality, in functional terms, and utilizing generic computer elements. Under the Supreme Court's *Alice* test for patent eligibility, the asserted claim of the '799 patent is clearly invalid.

Because the '799 patent claims patent-ineligible subject matter, SentinelOne respectfully requests that the Court dismiss the Complaint now to preserve the Court's and the parties' resources.

## BACKGROUND

On December 29, 2023, Plaintiff filed the Complaint in this action, alleging that SentinelOne infringes the '799 patent. ECF No. 1. Plaintiff is a non-practicing entity that has filed

1

13 lawsuits since May 2023, the first nine of which were settled and dismissed at an early stage.[1] The four cases that remain pending were filed just two months ago in December 2023.

A.   <u>The Specification Of The '799 Patent</u>

The '799 patent concerns a security management system for computer systems having endpoints.  An embodiment of the security management system is shown in Figure 1B of the '799 patent, reproduced below:



ECF No. 1-1, Figure 1B.  Some elements of the security management system include an "endpoint" (item 102), a "host" (item 181), and a "security subsystem," also called a "Security Utility Blade" or "SUB" (item 101).

The specification defines an "endpoint" as a conventional computing device such as a personal computer or a smartphone:

> The word "***endpoint***" will be used here to refer to an "endpoint computing system", for example a computing systems [*sic*] such as a server, a desktop or laptop PC, a PDA or a Smartphone, or a set-top box.

---

[1] Plaintiff's litigation history is a matter of public record and is subject to judicial notice.

*Id.* at 1:16-19 (emphasis added).[2]  The specification also defines the term "host."  In conventional situations in which one endpoint comprises one host—such as with a personal computer—a host is an endpoint:

> The words "***endpoint host***" or "***host***" hereafter refer to a primary processor-based computing system supported by any primary operating system.  ***Conventionally, one endpoint often comprises only one host, and in such case, a host is an endpoint, such as a conventional desktop PC***, typically having a main processor, possibly one or more coprocessors, and typically running an operating system.

*Id.* at 1:19-25 (emphasis added).

The security management system of the '799 patent includes "a hardware and software '***security subsystem***', herein called a ***Security Utility Blade (SUB)***."  *Id.* at 5:21-22 (emphasis added).  The specification describes the SUB in functional terms, meaning that it describes what the SUB does, but it does not specify any particular way of carrying out those functions.  For example, the specification states:

> The SUB functions in some embodiments as an open platform for repository of ***defense function*** software modules and optionally, immunization agent software modules from any participating vendors and such embodiments also provide resources for execution of the modules.

*Id.* at 6:50-55 (emphasis added); *see also* 8:43-47.  In this context, "defense functions" defend computer systems against attacks using well-known techniques such as cryptography, firewalls, antivirus, intrusion detection system and intrusion prevention system, application firewall, application proxy, application filtering, and content filtering.  *Id.* at 1:34-2:53.  The specification states that the SUB can download and execute defense function software modules from vendors.  *Id.* at 8:43-55.

---

[2] Citations to columns and lines of the specification of the '799 patent are written in the form of [column]:[line(s)].  Accordingly, the citation to "1:16-19" refers to column 1, lines 16-19.

The '799 patent further describes the SUB in terms of generic computer components.  The specification states that the SUB may include processing resources such as circuitry in the form of one or more chips or processors and may incorporate a general-purpose CPU (central processing unit).  *Id.* at 6:50-55.  Some embodiments of the SUB may include a Repository and Execution Unit (item 108 in Figure 1B above) for downloading and executing defense function software modules from vendors.  *Id.* at 8:43-47.

The '799 patent shows various embodiments and locations of the SUB.  For example, Figure 2B (reproduced below) shows an embodiment in which the SUB (item 101) is installed in a slot of the motherboard of the endpoint, such that the SUB is between the network and the host. *Id.* at 9:54-10:13.  The specification states, "Other placements, forms, and degrees of integration with the endpoint are also envisioned."  *Id.* at 9:48-49.  As another example, Figure 2C (reproduced below) shows an embodiment in which the SUB (item 221) is "mounted on or completely embedded in an endpoint motherboard."  *Id.* at 9:49-53.  Furthermore, the specification expressly discusses the security subsystem of the '799 patent being used with host-based defense function software modules:  "The SUB 101 may function in some embodiments as an open platform on which some or all of ***host-based defense function software modules*** … from various vendors can be downloaded and executed …."  *Id.* at 8:43-47 (emphasis added)).

B.    <u>The File History Of The '799 Patent</u>

The Complaint discusses part of the prosecution history of the '799 patent at paragraphs 22-26, but the underlying documents were not filed with the Complaint as exhibits. Nevertheless, Plaintiff put the prosecution of the '799 patent at issue in the Complaint, and the file

history is a matter of public record and is subject to judicial notice.[3]  The applications that led to the '799 patent were filed in 2004, 2005, and 2006.  ECF No. 1-1, cover page.  Principal examination by the USPTO occurred in 2010 and resulted in a final rejection of all claims in the application in view of prior art (i.e., previously-known technology) in August 2010.  The applicant appealed the final rejection in 2011, and the Patent Trial and Appeal Board of the USPTO reversed the final prior art rejection in August 2014.  Following the reversal on appeal, the examiner had an interview with the applicant and issued a notice of allowability in November 2014, and the '799 patent issued on January 20, 2015.  Patent eligibility was never discussed during the examination or appeal of the application that issued as the '799 patent.

### C.  The Asserted Claim Of The '799 Patent

The only specific claim of the '799 patent alleged to be infringed is claim 14.  The Complaint alleges infringement of "at least" claim 14 (ECF No. 1 ¶¶ 31, 32, 36), but it is the only claim addressed in Plaintiff's claim chart supporting the Complaint (ECF No. 1-2).  On February 20, 2024, Plaintiff's counsel stated to SentinelOne's counsel that Plaintiff had identified its asserted patent claims and that "Claim 14 is the asserted claim in this litigation."  Claim 14 is reproduced here:

> 14. A security subsystem configurable between a network and a host of an endpoint, the security subsystem comprising computing resources for providing:
>
> an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host.

---

[3] The file history of the '799 patent is available at the U.S. Patent and Trademark Office (USPTO) website at https://patentcenter.uspto.gov/applications/11597486/ifw/docs?application=

D.    <u>Allegations In The Complaint</u>

The Complaint asserts that the purported invention of the '799 patent overcomes deficiencies in the prior art.  The Complaint states that prior art defense functions could be network-based, host-based, or both.  ECF No. 1 ¶ 15.  The Complaint asserts that host-based deployment of defense functions have various problems, including potential software conflict, registry corruption, performance degradation, security vulnerability, and unfavorable financial impact.  *Id.*  The Complaint asserts that most residential internet users have insufficient knowledge of computer security and are likely to be subject to disruptions and other inconveniences.  *Id.* ¶ 16. The Complaint asserts that residential users who need to subscribe to multiple security services are subject to multiple subscriptions, bills, and payments and other inconveniences.  *Id.* ¶ 17.  The Complaint asserts that password management is important for endpoint security but inconvenient for users.  *Id.* ¶ 18.

In a conclusory manner, the Complaint alleges that the claims of the '799 patent overcome the deficiencies in the prior art with non-conventional approaches that transform the claimed subject matter into substantially more than abstract ideas.  *Id.* ¶ 19.

In a conclusory manner, the Complaint alleges that the claims of the '799 patent are not drawn to laws of nature, natural phenomena, or abstract ideas, and that the combinations of elements recited in the claims were not conventional or routine at the time of the invention.  *Id.* ¶ 20.

In a conclusory manner, the Complaint alleges that the claims of the '799 patent contain inventive concepts that transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.  *Id.* ¶ 21.

## LEGAL STANDARD

### A.   Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, [courts] are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555; cleaned up).

Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).  However, "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (cleaned up).

"The scope of the review must be limited to the four corners of the complaint" and attached exhibits.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citation omitted); *see also Blue Water Innovations, LLC v. Fettig*, 18-60671-CIV, 2019 WL 1904589, at *1 (S.D. Fla. Mar. 8, 2019) (Scola, J.) ("[W]here a plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents

7

part of the pleadings for purposes of Rule 12(b)(6) dismissal ....") (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)).

 **B.** <u>**Patent Invalidity Under Section 101**</u>

35 U.S.C. § 101 describes patent eligible subject matter as follows:  "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  However, this provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted).

The Supreme Court's *Alice* decision sets forth a two-step test for determining whether a patent claims such ineligible subject matter.

**<u>Alice step one</u>**.  The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts"—e.g., an abstract idea. *Id.* at 217.  "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence" and "does not require an evaluation of the prior art or facts outside of the intrinsic record." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020).  "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (cleaned up).  Where a claim recites "a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," the "functional nature of the claim confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

**Alice step two**.  If a claim is directed to ineligible subject matter, the second step is to "consider the elements of each claim both individually and as an ordered combination to determine whether [any] additional elements transform the nature of the claim into a patent eligible application."  *Alice*, 573 U.S. at 217 (cleaned up).  This step is a search for an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* at 217–18 (cleaned up).  For a computer-implemented invention to satisfy step two, "it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225).  Claims that "merely require generic computer implementation, fail to transform [an] abstract idea into a patent-eligible invention.  *Alice*, 573 U.S. at 221.

\*        \*        \*

The two-step *Alice* inquiry is a legal one, which may be decided based on the "intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'"  *Secured Mail Sols.*, 873 F.3d at 912 (internal citation omitted).  The Court can resolve the present motion without claim construction.  "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Content Extraction & Transmission*, 776 F.3d at 1349.  Accordingly, many decisions have found patents to be invalid for claiming ineligible subject matter at the Rule 12 stage.  *E.g.*, *Content Extraction & Transmission*, 776 F.3d 1343; *Secured Mail Sols.*, 873 F.3d 905; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016); *Affinity Labs of Tex.*, 838 F.3d 1266; *Elec. Comm'n*

9

*Techs., LLC v. ShoppersChoice.com, LLC*, 958 F. 3d 1178 (Fed. Cir. 2020); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021).

The Federal Circuit has explained, "While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Id.* But, as is the case here, "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (per curiam) (Moore, J., concurring in denial of rehearing).

## ARGUMENT

As noted above, claim 14 is the only asserted claim in this case. Claim 14 is directed to nothing more than the abstract idea of a computing platform for receiving and executing security software modules from multiple vendors. Claim 14 claims ineligible subject matter and is invalid under Section 101 under *Alice* and its progeny.[4]

---

[4] As discussed above at page 5, claim 14 is the only asserted claim in this action, but it is also representative of the other claims of the '799 patent because it is "substantially similar and linked to the same abstract idea" as claim 14 for purposes of assessing patent eligibility. *Content Extraction & Transmission*, 776 F.3d at 1348. In the event that Plaintiff reneges on its position that claim 14 is the only asserted claim, any other asserted claims from the '799 patent should also be found to be invalid under Section 101. Beyond the abstract idea, the differences between the other claims and claim 14 involve insignificant extra-solution activity that add no meaningful limitations to convert the abstract idea into patent-eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

The issuance of '799 patent is a function of timing. Principal examination of the application that issued as the '799 patent occurred in 2010 and resulted in a final rejection in view of prior art. The applicant appealed the final rejection in 2011. The Supreme Court issued the *Alice* decision several years later, in June 2014. Just two months later, the Patent Trial and Appeal Board reversed the prior art rejection. The examiner allowed the application soon thereafter in November 2014, and the '799 patent issued in January 2015. While the Complaint cites the file history of the '799 patent in arguing that its claims are patent eligible, Section 101 was never discussed during the prosecution of the '799 patent, and its claims were never evaluated for eligibility under the *Alice* standard. In any event, the applicant's "purported diligence and good faith during patent prosecution before the USPTO [do not] in any way shield the patent's claims from Article III review for patent eligibility." *Elec. Comm'n Techs.*, 958 F. 3d at 1183.

A.      **Alice Step 1:  Claim 14 Is Directed To An Abstract Idea**

For ease of reference, claim 14 is reproduced again here:

> 14. A security subsystem configurable between a network and a host of an endpoint, the security subsystem comprising computing resources for providing:
>
> an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host.

Claim 14 is directed to the abstract idea of a computing platform for receiving and executing security software modules from multiple vendors. This is apparent because claim 14 is written at a high level of generality, in functional terms, and utilizing generic computer elements. This is also apparent because claim 14 is similar to other claims that have been found by courts to be directed to an abstract idea.

In assessing claims written in functional terms, courts consider "whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Claims "directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Id.*

Here, claim 14 is directed to an abstract idea because it is indisputably written in generic, functional terms that describe a result without being tied to any specific means or method. It recites a "security subsystem" for "providing an open platform" for "receiving and executing security function software" for "providing defense functions for protection of the host." It is also indisputable that the claim language does not specify any particular, non-abstract way of ***how*** these steps should be carried out. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (claim was directed to an ineligible abstract idea because "[t]here is nothing in [the] claim that is directed to how to implement out-of-region broadcasting on a cellular telephone"); *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (finding claim abstract because it "contains no restriction on how the result is accomplished"). Rather, these steps are the result that comprises the abstract idea. The use of this type of "result-focused, functional character of claim language … has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Claim 14 is similar to a claim that the Federal Circuit found to be directed to an abstract idea in *Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020). Claim 1 in *Ericsson* read as follows:

12

1. A system for controlling access to a platform, the system comprising:

*a platform having a software services component* and an interface component, the interface component having at least one interface for providing access to the software services component *for enabling application domain software to be installed, loaded, and run in the platform*;

an access controller for controlling access to the software services component by a requesting application domain software via the at least one interface, the access controller comprising:

an interception module for receiving a request from the requesting application domain software to access the software services component;

and a decision entity for determining if the request should be granted wherein the decision entity is a security access manager, the security access manager holding access and permission policies; and

wherein the requesting application domain software is granted access to the software services component via the at least one interface if the request is granted.

*Id.* at 1325–26 (emphasis added).  Like claim 14 of the '799 patent, claim 1 in *Ericsson* involved a computing platform for enabling software to be installed, loaded, and run in the platform, but it also had additional limitations concerning controlling access to the software.

The Federal Circuit found this claim to be directed to the abstract idea of "controlling access to, or limiting permission to, resources."  *Id.* at 1326.  The court expressly found that the recited platform for enabling software to be installed, loaded, and run in the platform added nothing meaningful to the abstract idea because it did not specify how the function recited in the claim was carried out:

The first limitation recites "a platform having a software services component and an interface component," for the ultimate goal of "enabling application domain software to be installed, loaded, and run in the platform."  '510 patent claim 1. This recitation of functional computer components does not specify how the claim "control[s] access to a platform," nor does it direct the claim to anything other than that abstract idea.  It merely provides standard components that are put to use via the "access controller" limitation.

13

*Id.*  The Federal Circuit's determination that the claim at issue in *Ericsson* was directed to an abstract idea compels a finding here that claim 14 of the '799 patent is also directed to an abstract idea.

The security subsystem described in claim 14 amounts to no more than taking defense function software modules from multiple sources and combining them into a "security subsystem" for providing an "open platform."  However, combining functionality from multiple vendors does not change the abstract nature of claim 14.  *See cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1380-81 (Fed. Cir. 2021) (holding as patent-ineligible a claim for a computerized system that "provides the ability for a participant to use a single loyalty program GUI to make points-based purchases directly from multiple third-party vendor systems via multiple APIs."); *see also FairWarning*, 839 F.3d at 1096–97 ("The mere combination of data sources, however, does not make the claims patent eligible.").

The abstract idea described in claim 14 is analogous to a toolbox containing various tools for making a chair, such as a hammer, screwdriver, and saw.  Each tool may come from a different source—e.g., a hammer from Craftsman®, a screwdriver from DeWALT®, and a saw from Makita®.  But the mere combination of such tools in a single toolbox—without any specific instructions on how to use the tools in a specific manner to make the chair—is merely a result of applying the abstract idea of combining existing sources into a single package without altering the features or capabilities of any of the tools.

In this regard, claim 14 is also akin to those held ineligible in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342.  In that case, the Federal Circuit analyzed the patentability of a claim for an electronic device for carrying out secure financial transactions that authenticates the user based on two identification factors—i.e., biometric information and secret information

provided by the user.  *Id.* at 1351-52.  The Federal Circuit found that the challenged patent claims were directed to the abstract idea of "authenticating a user using conventional tools and generating and transmitting that authentication" that simply combined multiple existing tools in a single device and did not improve the underlying technology.  *Id.* at 1352.

Plaintiff's conclusory allegations that the claims of the '799 patent "are not drawn … to abstract ideas" and "comprise nonconventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas" cannot save the claims.  These are legal conclusions couched as factual allegations, expressed as "threadbare recitals" of the requirements of patent eligibility, "supported by mere conclusory statements," which the Court should reject. *See Iqbal*, 556 U.S. at 678; *Simio*, 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

### B. Alice Step 2:  Claim 14 Has Nothing That Transforms The Abstract Idea Into Patent Eligible Subject Matter

Claim 14 also fails at *Alice* step two because no inventive concept can be identified in the claim.  Beyond the abstract idea, the recited elements are entirely well-known, routine, and conventional, and do not transform the abstract idea into a patent-eligible invention.

The recited "endpoint" and "host" are described as conventional computing devices such as personal computers.  The "security subsystem" or SUB is described in terms of generic computer components such as a general purpose CPU.  The "security function software modules from multiple vendors for providing defense functions for protection of the host" are also described in generic terms and involve defense functions that the '799 patent acknowledges were "well known in the art"—e.g., cryptography, firewalls, and antivirus.  ECF No. 1-1 at 1:34-2:53.  Claims such as claim 14 that "merely require generic computer implementation, fail to transform the abstract idea into a patent-eligible invention."  *Alice*, 573 U.S. at 221.

15

The Complaint asserts that the claims of the '799 patent overcame deficiencies in the prior art.  ECF No. 1 ¶ 19.  However, those purported deficiencies are of no help to patent eligibility. They are either contradicted by the '799 patent itself or are irrelevant to what claim 14 actually claims.

As discussed above, the Complaint asserts that host-based deployment of defense functions has various problems.  ECF No. 1 ¶ 15.  Notwithstanding those assertions, the '799 patent also indisputably states that its purported invention ***includes*** host-based deployment of defense functions.  For example, as discussed above at page 4, Figure 2C shows an embodiment in which the security subsystem (SUB, item 221) is shown as part of the host—i.e., completely embedded in the motherboard of a desktop computer, in which a host is an endpoint.  (*See* the discussion of "host" above at page 3.)  Furthermore, as discussed above at page 4, the specification expressly discusses the security subsystem being used with "***host-based defense function software modules***." In view of this, Plaintiff cannot legitimately assert that a non-host-based deployment of defense functions—e.g., by locating the security subsystem between the network and the host—is meaningful for the purpose of assessing patent eligibility.

The Complaint cites other purported disadvantages of the prior art (ECF No. 1 ¶¶ 16-18) that are irrelevant.  The insufficient knowledge of residential users is irrelevant because claim 14 is not limited to any particular class of users.  And the purported disadvantages relating to residential users having to manage multiple subscriptions, bills, and payments or password management are similarly irrelevant because they concern functionality not recited by claim 14. Claim 14 does not have any limitations that require or speak to subscriptions, billing, payments, or passwords.

The Complaint has only conclusory statements concerning *Alice* step two.   ECF No. 1 ¶¶ 16-19.   The Complaint asserts that the claims of the '799 patent "comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas."   The Complaint states, "The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention."   The Complaint asserts, "Further, the claims of the '799 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter."   But there are no additional details, and these are all conclusory statements that do nothing more than recite the requirements for patent eligibility.   The Complaint has no explanation for ***how*** claim 14 supports any of those assertions. Here again, Plaintiff's allegations are merely "threadbare recitals" of the requirements of patent eligibility, "supported by mere conclusory statements," which the Court should reject.   *See Iqbal*, 556 U.S. at 678; *Simio*, 983 F.3d at 1365.

Claim 14 does not recite any unique security methods.   Rather, it claims a security subsystem that provides for an "open platform" to aggregate already known defense software modules—i.e., a toolbox.   Claim 14 recites nothing more than the "combination of [] long-standing conventional methods" for security which would "yield[] expected results of an additive increase in security" from each individual vendor's module.   *Universal Secure Registry*, 10 F.4th at 1353. "There is nothing in the specification suggesting, or any other factual basis for a plausible inference (as needed to avoid dismissal), that the claimed combination of these conventional [] techniques achieves more than the expected sum of the security provided by each technique."   *Universal Secure Registry*, 10 F.4th at 1353.

The foregoing shows that claim 14 fails the test for eligibility at *Alice* step two.

## CONCLUSION

WHEREFORE, Defendant SentinelOne, Inc. respectfully requests that this Court enter an Order finding claim 14 of the '799 patent to be invalid under Section 101, dismissing Plaintiff's Original Complaint for Patent Infringement, and granting such other and further relief as this Court deems just and proper.

Dated:  February 26, 2024                                    Respectfully submitted,


/s/Gene W. Lee_____            /s/Joseph W. Bain_____
**GENE W. LEE, ESQ.**                              **JOSEPH W. BAIN**
*Pro hac vice*                                     Florida Bar No. 860360
glee@perkinscoie.com                               Email:  jbain@shutts.com
**PERKINS COIE LLP**                               **SHUTTS & BOWEN LLP**
1155 Avenue of the Americas, 22nd floor            1100 CityPlace Tower
New York, NY 10036                                 525 Okeechobee Boulevard
Telephone: (212) 262-6900                          West Palm Beach, Florida 33401
Facsimile: (212) 977-1649                          Telephone: (561) 835-8500
                                                   Facsimile: (561) 650-8530

**ATTORNEYS FOR DEFENDANT
SENTINELONE, INC.**                                -and-

                                                   **JODI-ANN TILLMAN**
                                                   Florida Bar No. 1022214
                                                   Email: JTillman@shutts.com
                                                   **SHUTTS & BOWEN LLP**
                                                   201 East Las Olas Boulevard
                                                   Suite 2200
                                                   Fort Lauderdale, Florida 33301
                                                   Telephone:     (954) 524-5505
                                                   Facsimile:     (954) 524-5506

                                                   **ATTORNEYS FOR DEFENDANT
                                                   SENTINELONE, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which caused a copy to be served on all counsel of record.

## SERVICE LIST

**Barbra Anne Stern**
Law Office of Barbra Stern PA
808 East Las Olas Boulevard
Suite 102
Fort Lauderdale, Florida 33301
Tel: 954-239-7249
Email: barbra@sternlawoffice.com

and

**Randall Garteiser**
Garteiser Honea, PLLC
119 W. Ferguson Street
Tyler, Texas 75702
Tel: 903-7057420
Email: rgarteiser@ghiplaw.com

*Attorneys for Plaintiff*

By:     */s/Joseph W. Bain*_____
                  Joseph W. Bain

WPBDOCS 20893196 1

19